UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michelle Ong,<br><br>Plaintiff,<br><br>v.<br><br>Mediaite, LLC,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

Plaintiff Michelle Ong ("*Plaintiff*"), by and through her undersigned counsel, for her Complaint against defendant Mediaite, LLC ("*Defendant*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Plaintiff created a video of rangers driving through a blockade of climate protesters on the road to the Burning Man festival in Nevada (the "*Video*"), in which Plaintiff owns the rights and which Plaintiff licenses for various uses including online and print publications.

3. Defendant owns and operates a website at www.mediaite.com (the "*Website*").

4. Defendant, without permission or authorization from Plaintiff, copied the Video, uploaded it to its own video player, and publicly displayed and performed it on the Website and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

5. Plaintiff is an individual who is a citizen of the State of California and maintains a principal place of business in Los Angeles County, California.

6. Defendant is a Delaware limited liability company with a principal place of business at 1261 Broadway, Suite 606, New York, New York 10001.



SLG SANDERS · LAW GROUP ·

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

8. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

9. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant resides and may be found in this Judicial District and because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

10. Plaintiff is a professional journalist and videographer who is the legal and rightful owner of certain videos which Plaintiff commercially licenses.

11. Plaintiff is based in Los Angeles and, for many years, has reported on music, nightlife, and counterculture under the byline Michelle Lhooq.

12. Plaintiff's reporting has appeared in publications including the Los Angeles Times, GQ, The Guardian, Vogue, Bloomberg, New York Magazine, Pitchfork, and The FADER, and Plaintiff previously served as an electronic music editor at VICE.

13. Plaintiff is the author of the book *Weed: Everything You Want to Know But Are Always Too Stoned to Ask*, and she writes *Rave New World*, a newsletter covering rave culture and counterculture.

14. Plaintiff documents newsworthy events she witnesses on video and publishes that footage to her account on the social media platform X, @MichelleLhooq.

15. Plaintiff has invested significant time and money in building Plaintiff's video portfolio.

16. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's videos while many others are the subject of pending copyright applications.



SLG SANDERS · LAW GROUP ·

17. Plaintiff's videos are original, creative works in which Plaintiff owns protectable copyright interests.

18. On August 27, 2023, Plaintiff first published the Video by posting it to her X account. A still frame from the Video is attached hereto as Exhibit 1.

19. The Video captures the moment, on August 27, 2023, when rangers drove a pickup truck through a blockade that climate protesters had erected across the road leading to the Burning Man festival, and the confrontation that followed.

20. In creating the Video, Plaintiff personally selected the subject matter, vantage point, timing, framing, angle, duration, and camera movement used to capture the Video and made each and every artistic determination necessary for the creation of the work.

21. On November 14, 2023, the Video was registered by the USCO under Registration No. PA 2-446-141.

22. The Video was registered within three months after its first publication. Plaintiff is therefore entitled to elect statutory damages and to seek attorneys' fees under 17 U.S.C. §§ 412, 504(c), and 505, even though the Infringement commenced before the effective date of registration.

23. Plaintiff created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution.

**B. Defendant's Infringing Activity**

24. Defendant is the registered owner of the Website and is responsible for its content.

25. Defendant is the operator of the Website and is responsible for its content.

26. The Website is a key component of Defendant's popular and lucrative commercial enterprise.

27. The Website was founded in 2009 by Dan Abrams and is part of the Abrams Media network of websites. Defendant publishes news and commentary about politics and the media on the Website.

28. Defendant's business model depends on attracting readers to the Website and

monetizing that audience. Upon information and belief, Defendant generates revenue by selling advertising on the Website, including video advertisements that play before video content in Defendant's video player, and by selling subscriptions to "Mediaite+," a paid offering that Defendant markets to readers as a way to avoid those video advertisements.

29. Upon information and belief, in 2023, the year of the Infringement, the Website received hundreds of millions of page views.

30. Video drives Defendant's business. Defendant routinely publishes articles headlined "WATCH:" that are built around a video displayed in Defendant's own video player, and, upon information and belief, each play of a video in that player gives Defendant an opportunity to serve a video advertisement.

31. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

32. Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

33. Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

34. Defendant is no stranger to copyright litigation over its unlicensed use of news video. In *Eliahu v. Mediaite, LLC*, No. 1:23-cv-11015 (VM) (S.D.N.Y.), a videojournalist sued Defendant for publishing a frame from his news video of a member of Congress without a license. On September 23, 2024, the Court denied Defendant's motion to dismiss, rejecting Defendant's fair use and de minimis defenses at the pleading stage.

35. In *Level 12 Productions, LLC v. Mediaite, LLC*, No. 1:24-cv-00006 (JAV) (S.D.N.Y.), this Court granted summary judgment of liability against Defendant for displaying a news video on the Website without a license. The Court rejected Defendant's argument that it did

not display the video because the video was hosted on a third-party platform and rejected Defendant's fair use defense where Defendant used the video to show readers the newsworthy event that the video captured rather than to comment on the video itself.

36. In that action, Defendant stipulated that its editor reviewed the article containing the infringing video before it was published, that the video bore a watermark identifying its owner, and that no one at Defendant inquired about a license with the individual the watermark identified.

37. On August 29, 2023, without permission or authorization from Plaintiff, Defendant volitionally copied the Video, uploaded it to its own video player, and displayed and performed it on the Website as part of an article titled "WATCH: Park Rangers Plow Through Environmental Protestors Blocking Road to Burning Man" at URL: https://www.mediaite.com/news/watch-park-rangers-plow-through-environmental-protestors-blocking-road-to-burning-man/ (the *"Infringement").* A copy of a screengrab depicting the Infringement is attached hereto as Exhibit 2.

38. The article bears the byline of Ken Meyer. Upon information and belief, Mr. Meyer wrote and published the article within the course and scope of his employment by Defendant.

39. Defendant did not link to or embed Plaintiff's post of the Video. Instead, Defendant made its own copy of the Video, hosted that copy in Defendant's own video player on the Website, and superimposed its own "MEDIAITE" logo over the Video.

40. Defendant monetized the Infringement. The video player in which Defendant displayed the Video carried a banner reading "Want to avoid video ads? Subscribe to MEDIAITE+," and, upon information and belief, Defendant served video advertisements to viewers who played the Video.

41. The article drew more than 500 reader comments.

42. The text of the article does no more than describe the event that the Video depicts. Defendant used the Video for the very purpose for which Plaintiff created it, to show viewers the newsworthy event the Video captured, and not to comment on, criticize, or analyze the Video itself.



SLG SANDERS LAW GROUP

43. The only credit Defendant gave was a “hat tip” to Plaintiff's X account, “@MichelleLhooq.” Defendant therefore knew the identity of the Video's creator, yet never contacted Plaintiff to request a license.

44. The Infringement is an exact copy of Plaintiff's original video that was directly copied, displayed, and performed by Defendant.

45. Plaintiff first observed the Infringement on November 15, 2023.

46. Upon information and belief, the Video was copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Video.

47. The Infringement includes a URL (“*Uniform Resource Locator*”) for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

48. Upon information and belief, Defendant takes an active and pervasive role in the content posted on its Website, including, but not limited to copying, posting, selecting, commenting on and displaying videos including but not limited to Plaintiff's Video.

49. Upon information and belief, the Video was willfully and volitionally posted to the Website by Defendant.

50. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringement was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringement which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringement on the part of Defendant.

51. Upon information and belief, Defendant engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

52. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Website and exercised and/or had the right and ability to exercise such right.

53. Upon information and belief, Defendant monitors the content on its Website.

54. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringement.

55. Upon information and belief, the Infringement increased traffic to the Website and, in turn, caused Defendant to realize an increase in its business revenue, including advertising revenue.

56. Upon information and belief, a large number of people have viewed the unlawful copies of the Video on the Website.

57. The Infringement remained on public display on the Website for an extended period after its initial publication.

58. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

59. Defendant's use of the Video harmed the actual market for the Video.

60. A robust licensing market exists for newsworthy, viral video footage, and news organizations routinely pay to license such footage for use in their reporting. Defendant's unlicensed use of the Video usurped that market.

61. Defendant's use of the Video, if widespread, would harm Plaintiff's potential market for the Video.

62. On July 30, 2025, Plaintiff, via counsel, served a letter seeking to address the complaints contained herein concerning Defendant's infringement of Plaintiff's rights-protected work.

63. On August 29, 2025, Plaintiff, via counsel, served a follow-up letter seeking to address the complaints contained herein directly with Defendant in an attempt to avoid litigation concerning Defendant's infringement of Plaintiff's rights-protected work.

64. Despite Plaintiff's efforts and willingness to address Defendant's infringing activity Defendant failed to respond and Plaintiff was forced to seek judicial intervention for Defendant's infringing activity.

65. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST COUNT**
***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

66. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

67. The Video is an original, creative work in which Plaintiff owns a valid copyright.

68. The Video is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

69. Plaintiff has not granted Defendant a license or the right to use the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

70. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally reproduced, publicly displayed, and publicly performed the Video, thereby violating Plaintiff's exclusive rights under 17 U.S.C. § 106(1), (4), and (5).

71. Defendant's reproduction, display, and performance of the Video constitute willful copyright infringement.

72. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Video in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Video without Plaintiff's consent or authority.

73. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c).

74. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs

pursuant to 17 U.S.C. § 505 from Defendant.

75. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**JURY DEMAND**

76. Plaintiff hereby demands a trial of this action by jury.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Video in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Video by copying, displaying, and performing it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

SLG SANDERS LAW GROUP

DATED: November 10, 2026

**SANDERS LAW GROUP**

By: *___/s/ Craig Sanders___________*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129479

*Attorneys for Plaintiff*